**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**BRUCE JONES**                                                                                                  **PLAINTIFF**

**V.**                     **CASE NO. 3:14CV00270-BD**

**CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration**                                                 **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bruce Jones appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.**       **Background**

On May 7, 2013, Mr. Jones protectively filed for DIB benefits due to post traumatic stress disorder (PTSD), pins in ankle, pins in elbow, depression, and sleep apnea. (Tr. 204) Mr. Jones's claims were denied initially and upon reconsideration. At Mr. Jones's request, an Administrative Law Judge ("ALJ") held a hearing on August 23, 2013, where Mr. Jones appeared with his lawyer. At the hearing, the ALJ heard testimony from Mr. Jones and a vocational expert ("VE"). (Tr. 38-89)

The ALJ issued a decision on October 20, 2014, finding that Mr. Jones was not disabled under the Act. (Tr. 10-24) On November 4, 2014, the Appeals Council denied Mr. Jones's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3)

Mr. Jones, who was fifty-six years old at the time of the hearing, has a degree from a vocational college and past relevant work experience as a furniture assembler, industrial maintenance helper, machine feeder, and meter reader.  (Tr. 41-42, 81-82)

## II.     Decision of the Administrative Law Judge[1]

The ALJ found that Mr. Jones had not engaged in substantial gainful activity since September 22, 2009, and that he had the following severe impairments: status-post fractured left ankle, arthritis in the left ankle and left elbow, sleep apnea, PTSD, traumatic brain injury, and depression.  (Tr. 12)  The ALJ also found that Mr. Jones did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2]  (Tr. 14)

According to the ALJ, Mr. Jones had the residual functional capacity ("RFC") to perform medium work that involves only occasional stooping, crouching, bending, crawling and balancing, but no climbing ladders, ropes, or scaffolding.  The work could involve frequent overhead reaching with the non-dominant upper extremity.  The work would need to be simple, routine, and repetitive, with only occasional contact with coworkers and supervisors; no contact with the general public.  The supervision required

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy.  20 C.F.R. § 416.920(a)-(g).

[2] 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.

would be simple, direct, and concrete (Tr. 15) The VE testified that an individual with these limitations could work as a store laborer, and commercial laundry worker. (Tr. 87-88)

After considering the VE's testimony and other evidence, the ALJ determined that Mr. Jones could perform a significant number of other jobs existing in the national economy and found, therefore, that Mr. Jones was not disabled.

## III. Analysis

### A. Standard of Review

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

B.  **Mr. Jones's Arguments for Reversal**

Mr. Jones argues that the Commissioner's decision should be reversed because the ALJ: (1) improperly found that he could do medium work; and (2) failed to consider his Veterans Administration ("VA") disability rating. (Docket entry #14)

1.  **Medium Work**

Mr. Jones argues that the ALJ "never explained the discrepancy between Dr. Troxel's limitations on Jones's ability to stand or walk and the ALJ's finding that Jones can engage in medium work." (#14) Specifically, Dr. Troxel found that Mr. Jones was unable to tandem walk and could not stand/walk without an assistive device. (Tr. 496-497)

As the ALJ noted, however, several factors weigh against Mr. Jones's credibility regarding the severity of his impairments. They also contradict Dr. Troxel's findings. For example, all of Mr. Jones's alleged impairments are decades old. He hurt his elbow in 1967 and his ankle in the mid-1980s. (Tr. 415) Importantly, Mr. Jones was active in the military and worked for years with these impairments. "[A] condition that was not disabling during working years and has not worsened cannot be used to prove present disability." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)

Although Mr. Jones complains that the pain is worse, his complaints are not supported by the record as a whole. For example, records from August 30, 2012 and July 25, 2011 indicate "no significant limitations noted" as related to Mr. Jones's ankle and "no limitation limiting the employability of the veteran due to his ankle condition." (Tr.

4

426) In March 2013, the treating doctor noted reduced range of motion in the elbow and ankle, but his strength was normal in both areas. (Tr. 417) At the same visit, Mr. Jones told his doctor that he had a cane but did not use it, because he lost it. (Tr. 415) The fact that Mr. Jones did not use his cane and had not attempted to replace it indicates that the severity of his alleged mobility limitations are not fully credible.

In July 2012, Mr. Jones reported that he was "unable to find employment," which suggests he was looking for work and able to work. (Tr. 427) Notes from November 2013 indicate that Mr. Jones "has moved around a lot looking for work." (Tr. 524) Additionally, the treating doctors also recommended that Mr. Jones "exercise most days of the week" and lose weight. (Tr. 412) Mr. Jones disputes it, but it appears from the record that he hurt himself in 2011 after a running incident. (Tr. 60-61) The fact that Mr. Jones was able to run also weighs against the severity of his alleged impairment and Dr. Troxel's findings.

In March 2012, Mr. Jones complained of pain in his elbow and ankle but was taking only over-the-counter medications for pain. (Tr. 450) *Smith v. Colvin*, 756 F.3d 621, 626 (8th Cir. 2014) (lack of narcotic medications can be considered when weighing credibility of claims). Additionally, the ALJ noted that Mr. Jones had undergone only conservative, routine treatment for his impairments. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (finding that an ALJ may rely on the fact that a claimant has undergone only conservative treatment when evaluating the severity of the impairments). Finally, the ALJ properly noted that Mr. Jones's "treatment has been sporadic [with] significant

gaps in the treatment records." (Tr. 17) *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (An ALJ may weigh the credibility of a claimant's subjective complaints of pain by considering multiple factors, including whether or not the claimant seeks regular medical treatment.).

### 2. VA Disability Rating

Mr. Jones contends that the ALJ erred because there "is no indication that he considered [the VA disability] rating when formulating his RFC. (Docket entry #11) The ALJ mentioned the VA disability rating in his opinion and asked Mr. Jones about it during the hearing. (Tr. 20, 50, 57-58) He also discussed the medical evidence related to the rating decision, but came to a different conclusion. Although the ALJ "should consider the VA's finding of disability," he "is not bound by the disability rating of another agency when he is evaluating whether the claimant is disabled for purposes of social security benefits." *Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2006). The VA decision was based on ankle and elbow problems as well as PTSD. As noted, the ALJ properly found that the elbow and ankle impairments were not disabling.

As for PTSD, Mr. Jones had not been taking mental health medications as prescribed and was self medicating with alcohol and marijuana. (Tr. 409) He also testified that he had not been to mental health therapy in several years and records show a tendency to be a no-show for appointments. (Tr. 75, 452) Finally, he told doctors that he needed mental health treatment and he was scheduled to start courses in January of 2013. He advised his doctor, however, that he could not attend treatment until after May

because he was enrolled in school.  (Tr. 424)  These contradictions all weigh against Mr. Jones's credibility and support the ALJ's decision not to adopt the VA's decision.

IV.     **Conclusion**

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence.  There is sufficient evidence in the record as a whole to support the Commissioner's decision.

Accordingly, Mr. Jones's appeal is DENIED, and the Clerk of Court is directed to close the case.

IT IS SO ORDERED, this 14th day of July, 2015.

_____
UNITED STATES MAGISTRATE JUDGE